UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSHUA HOWES,<br><br>    Plaintiff,<br><br>    v.<br><br>PHOENIX FIRE PROTECTION, LLC and TRENT BICE,<br><br>    Defendants. | Case No. 1:23-cv-00512-BLW<br><br><br><br>**MEMORANDUM DECISION AND ORDER** |
| MATHEW MENDENHALL<br><br>Plaintiff,<br><br>    v.<br><br>PHOENIX FIRE PROTECTION, LLC and TRENT BICE,<br><br>    Defendants. | |
| AUGUSTINE VILLANUEVA,<br><br>    Plaintiff,<br><br>    v.<br><br>PHOENIX FIRE PROTECTION, LLC and TRENT BICE,<br><br>    Defendants. | |

**MEMORANDUM DECISION AND ORDER - 1**

# INTRODUCTION

Before the Court is the defendants' motion for summary judgment (Dkt. 16) and the plaintiffs' motion for partial summary judgment (Dkt. 17). For the reasons discussed below, the Court will deny in part and grant in part the defendants' motion and deny the plaintiffs' motion.

# BACKGROUND

In short, Joshua Howes, Matthew Mendenhall, and Augustine Villanueva all worked for Phoenix Fire Protection in Idaho Falls, ID.[1] Phoenix Fire installs fire protection systems across several states including Idaho and Wyoming. *Wessel Decl.*, Ex. A at 25:18–25, Dkt. 17-5. Employees who worked out of the Idaho Falls location were often required travel to worksites in and around Jackson, WY. Def. Ex. B at 30:17–23. The drive from Idaho Falls to Jackson takes at least two hours, though it may take significantly longer if there's traffic or poor road conditions. Def. Ex. C at 28:18–20, Dkt. 16-6. To account for the length of travel time, Phoenix Fire increased the pay of employees working in the Jackson area by 20%. Def. Ex. B at 34:11–13, Dkt. 16-5.

---

[1] Trent Bice, the owner of Phoenix Fire, is the other named defendant in this case. *Bice Decl.* at ¶ 1, Dkt. 16-8. For the purposes of this Memorandum Decision and Order, the Court will refer to the defendants—Mr. Bice and Phoenix Fire Protection—collectively as Phoenix Fire.

When the plaintiffs worked a job in Jackson, they would usually meet at Phoenix Fire's shop in Idaho Falls and drive together to the jobsite. Def. Ex. B at 43:19–44:13, Dkt. 16-4. If they had to load up the truck with supplies, all of the employees would clock-in at the shop and remain clocked in the rest of the day. Def. Ex. B. at 65:22–66:15, Dkt. 16-4. If the plaintiffs did not need to load anything from the shop, the crew did not clock-in until 6 am. *Id.* at 66:21–67:4. Practically speaking, this meant employees were not compensated for most, if not all, of the drive to Jackson. During this long drive, employees would "look over plans for the job," study code books, organize job logistics, sleep, or perform other tasks. *See Howes, Villanueva, and Mendenhall Decls.* at ¶ 9, Dkts. 17-3, 17-4, 17-7. The three plaintiffs allege the failure to compensate employees for the time spent driving to and from Jackson violates the Fair Labor Standards Act, or FLSA, and the Idaho Wage Claim Act, or IWCA for short. Two of the three plaintiffs, Mr. Howes and Mr. Villanueva, also claim they were wrongfully terminated in retaliation for complaining about the drive time policy. Phoenix Fire now moves for summary judgment and the plaintiffs move for partial summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of

the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). There must be a genuine dispute as to any *material* fact—a fact "that may affect the outcome of the case." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). In evaluating whether the moving party has met this burden, the Court must view the evidence in the light most favorable to the non-moving party and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).

Once the moving party has met its burden, the non-moving party carries the burden to present evidence showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 323. The non-moving party must go beyond the pleadings and show through "affidavits, or by the depositions, answers to interrogatories, or admissions

on file" that a genuine dispute of material fact exists. *Id.* at 324.

## ANALYSIS

The plaintiffs allege three claims against Phoenix Fire: failure to pay wages under the FLSA, failure to pay wages under IWCA, and wrongful termination under both Acts. The Court will begin by considering the parties' arguments as to the failure to pay claims before turning to their arguments as to the two wrongful termination claims.

### A.    Failure to Pay Overtime Wages Claims

Both the plaintiffs and Phoenix Fire move for summary judgment on the plaintiffs' failure to pay wages claims under the FLSA and IWCA. The plaintiffs bring claims under both Acts for unpaid overtime wages.[2] They allege that their travel time from Idaho Falls to Jackson, WY was work under the Acts and they should be compensated for the travel time.

Generally, ordinary home-to-work travel is not compensable under the FLSA or IWCA. *See Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046, 1054 (9th Cir. 2010); Idaho Code § 44-1202(1). The Portal-to-Portal Act, an amendment to the FLSA, clarified the Act does not require an employer to compensate an employee

---

[2] It appears both parties agree that the FLSA and IWCA do not conflict with each other and, accordingly, the claims under both Acts may be addressed together. Dkt. 21 at 6 (stating no conflict between the Acts); Dkt. 16-2 at 15 (jointly addressing plaintiffs' claims under both Acts).

for travel "to and from the actual place of performance of the principal activity or activities which such employee is employed to perform," and for "activities which are preliminary to or postliminary to" the employee's principal activities. 29 U.S.C. § 254(a)(1)–(2). That said, preliminary and postliminary activities are compensable "if those activities are integral and indispensable part of the [employee's] principal activities" provided these activities are not *de minimis*. *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902–903 (9th Cir. 2003).

To the extent the plaintiffs argue their travel time was compensable because they were required to meet in Idaho Falls and travel together to Jackson, that argument is foreclosed. The law is clear that simply meeting at a designated meeting place to travel to a worksite is not enough to make travel time compensable if the employees do not "receive instructions[,] perform other work[,] or to pick up and carry tools." 29 C.F.R. § 785.38; *Senne v. Kansas City Royals*, 591 F. Supp. 3d 453, 534 (N.D. Cal. 2022). Instead, for the commute time to be compensable, the plaintiffs must have "perform[ed] additional legally cognizable work while driving to their workplace." *Rutti*, 596 F.3d at 1053. And, according to the plaintiffs, they did perform such legally cognizable work.

Indeed, the plaintiffs offer several activities they believe constitute legally cognizable and compensable work: (1) driving the work vehicle, (2) hauling tools, (3) picking up and driving temporary employees, and (4) other work-related tasks.

The Court will consider each activity in turn, beginning with driving the work vehicle.

### 1. Driving the Work Vehicle

The plaintiffs argue all of their commute time is compensable because Phoenix Fire required the foreman of the job to drive a work-provided vehicle to Jackson and required all other employees working at that site to drive with the foreman. In support of this argument, the plaintiffs cite to two out-of-circuit district court cases suggesting this time is compensable. *See Pl.'s Motion* at 5–7, Dkt. 17-2 (citing *Pietrzycki v. Heights Tower Service, Inc.*, 290 F. Supp. 3d 822, 830 (N.D. Ill. 2017) and *Dekker v. Const. Specialists of Zeeland, Inc.*, No. 1:11-CV-252, 2012 WL 726741 (W.D. Mich. Mar. 6, 2012)). These cases are unpersuasive as they plainly conflict with Ninth Circuit precedent holding otherwise. In *Rutti*, the Ninth Circuit concluded that requiring an employee to use a work-provided vehicle did not render that commute time compensable, even where the employer placed restrictions on the employee's use of the vehicle. *Rutti*, 596 F.3d at 1052–54. Based on *Rutti*, there can be no argument that simply driving (or riding in) a work-provided vehicle renders the commute compensable time.

### 2. Hauling Tools

*Rutti* similarly forecloses the plaintiffs' argument that hauling tools to the worksite, in the work vehicle, makes the commute time compensable. The tools at

issue are those that stayed on the work truck and those belonging to the individual employees. *Howes Dep.*, Def. Ex. B at 97:12–19, Dkt. 16-5. The *Rutti* Court's review of the legislative history recognized that Congress specifically contemplated that "the transportation of tools and supplies, would not change the noncompensable nature of the travel." *Rutti*, 596 F.3d at 1053. Moreover, *Rutti*'s reliance on *Bobo v. United States*, 136 F.3d 1465 (Fed. Cir. 1998) supports the conclusion that transporting tools does not transform an employee's commute into "work" under the FLSA. In *Bobo*, the Federal Circuit held that Border Patrol agents were not entitled to compensation for the time spent transporting their dogs between their homes and the office. *Id.* at 1466–67. Akin to the tools stored on the Phoenix Fire truck and the tools belonging to the employees, transportation of the dogs was necessary for Border Agents to perform their jobs. *Id.* at 1466. Nonetheless, the transportation of the dogs was not enough to make the commute compensable. *Id.* at 1468. The same is true here because "there is no evidence that the equipment [the plaintiffs] carried transformed the nature of [their] commute." *Kerr v. Sturtz Finishes, Inc*, No. C09-1135RAJ, 2010 WL 3211946, at *3 (W.D. Wash. Aug. 12, 2010). Hauling tools, without more, does not transform noncompensable travel time into compensable travel time.

### 3. Picking Up Temporary Employees

Next, the plaintiffs argue that, for a period of time, Mr. Howes was required to pick up temporary employees and drive them to Jackson. At the outset, there is a factual dispute whether Mr. Howes was required to pick up these employees or whether he volunteered. *Def. Ex. B* at 75:4–77:25; 124:22–125:9, Dkt. 16-5. If he was required to pick up and drop off the temporary employees, that may render his commute compensable. *See Ketchum v. City of Vallejo*, 523 F. Supp. 2d 1150, 1162 (E.D. Cal. 2007) (finding time spent picking up horses prior to events requiring the horses was compensable). If, on the other hand, Mr. Howes volunteered to pick up the temporary employees, then that time likely would not be compensable. Accordingly, summary judgment for either party is inappropriate as a factual dispute exists.

### 4.  Other Work-Related Tasks

Finally, the plaintiffs argue that they were required to perform a range of tasks during the commute that they believe make the time compensable. *See Howes, Villanueva, and Mendenhall Decls.* at ¶ 9, Dkts. 17-3, 17-4, 17-7. As stated previously, an employer is not required to compensate employees for activities "activities performed either before or after the regular work shift" unless "those activities are an integral and indispensable part of the principal activities for which [the employees] are employed" and not de minimis. *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956); *Alvarez*, 339 F.3d at 902–903.

MEMORANDUM DECISION AND ORDER - 9

Plainly some of the tasks referenced by the plaintiffs are related not to their employment, but to their commute and are not compensable. *Rutti*, 596 F.3d at 1057. For example, "filling the truck with fuel", "washing windshields", "checking tire pressure and adding air" when necessary, and "removing snow from truck" are not integral to the plaintiffs' principal activities of installing fire protection systems. *Howes, Villanueva, and Mendenhall Decls.* at ¶ 9, Dkts. 17-3, 17-4, 17-7. Indeed, such tasks are expressly excluded from the FLSA:

> [A]ctivities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employees principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and employee or representative of such employee.

29 U.S.C. § 254(a). Accordingly, these incidental activities cannot form the basis of the plaintiffs' FLSA claim.

That said, other activities described by the plaintiffs may be sufficiently integral to their principal activities to be compensable. These tasks include "studying code books", "preparing for tests and studying flash cards", "planning the day's activities", "filling out smart sheets", "communicating with other employees" about the job and logistics, and "looking at plans for the job." *Howes, Villanueva, and Mendenhall Decls.* at ¶ 9, Dkts. 17-3, 17-4, 17-7. The Court will address the remaining activities in two parts.

      *a.* Studying Code Books, Preparing for Tests, and Studying

**MEMORANDUM DECISION AND ORDER - 10**

Flashcards

First, activities such as studying code books, preparing for tests, and studying flash cards could be compensable, but more information is required to make that determination. For instance, courts have held that time spent training or studying that is primarily for the benefit of the employer is compensable under the FLSA as a principal activity. *See e.g.*, *Atkins v. Gen. Motor Corp.*, 701 F.2d 1124, 1130 (5th Cir. 1983) ("[S]tudy to perform a job may be preliminary or postliminary to that activity[.]"). On the other hand, where the training "is at least equally beneficial" to the employer and the employees, courts have not considered the time spent on training compensable. *See Imada v. Hercules*, 138 F.3d 1294, 1297 (9th Cir. 1998). In *Imada*, police officers argued they were entitled to compensation for their travel time to mandatory training. *Id.* The Ninth Circuit disagreed, concluding that the training did not meet the exception to the general rule that commute time is not compensable because the training was a "mandated incident of [the officers'] employment" and was "equally beneficial to the officers, who must attend POST-approved training in order to meet and maintain state law enforcement certification requirements." *Id.*

Here, there is not enough information to conclude whether the plaintiffs' studying was mainly for the benefit Phoenix Fire or if it also benefited the plaintiffs. *Tomassi v. City of Los Angeles*, is illustrative on this point. No. CV 08-

1851 DSF (SSx), 2010 WL 11596646, at *2 (C.D. Cal. Apr. 2, 2010). In *Tomassi*, the district court denied summary judgment because question of fact remained as to whether the time probationary firefighters spent studying was purely for the benefit of the firefighters or if the City also benefitted because it "provided a better trained, more capable firefighting force." *Id.* The same question exists here. It is unclear from the record what tests the plaintiffs were studying for and whether those were solely for the benefit of Phoenix Fire or if the plaintiffs garnered some benefit as well. *See* Def. Ex. B at 64:10–18, Dkt. 16-5. As such, summary judgment for either party is unwarranted.

### b. Filing Out Smart Sheets, Logistics, and Planning

Turning now to the remaining activities discussed by the plaintiffs: filling out smart sheets, communicating with other employees about logistics, and making plans for the job. Assuming for the purposes of this motion that these activities are principal activities, which appears likely given they relate to the plaintiffs' work, a question remains as to whether these tasks are de minimis. The Ninth Circuit has made clear that "employees cannot recover for otherwise compensable time if it is *de minimis*." *Alvarez*, 339 F.3d at 903 (quoting *Lindow v. United States*, 738 F.2d 1057, 1061–62 (9th Cir. 1984)). Although there is "[n]o rigid rule[,]" "[m]ost courts have found daily periods of approximately 10 minutes" to be de minimis. *Lindow*, 738 F.2d at 1062 (collecting cases). Here, the tasks, if performed daily,

could take more than that ten minute threshold or, just as likely, could take less than ten minutes. There is nothing in the record for the Court to determine whether this time is de minimis, so summary judgment for either Phoenix Fire or the plaintiffs is inappropriate.

Finally, despite the plaintiffs' suggestion that the "unrebutted" declarations of the plaintiffs require summary judgment in their favor, the Court disagrees. At the hearing, counsel for the plaintiffs represented that each of the tasks listed in their declarations was performed every day. The declarations themselves, however, necessarily belie that point as the plaintiffs could not have removed snow from the truck every day. *Howes, Villanueva, and Mendenhall Decls.* at ¶ 9, Dkts. 17-3, 17-4, 17-7. Moreover, deposition testimony from the plaintiffs also contradicts this claim. For instance, Mr. Howes testified that in his car the passengers were not required to do any job-related tasks on the drive. *Def. Ex. B* at 126:9–127:5, Dkt. 16-5. With this context and the factual disputes identified above, summary judgment is not warranted for the plaintiffs based solely on their declarations.

### B.    Wrongful Termination Claims

Finally, Mr. Howes and Mr. Villanueva bring claims for wrongful termination under state and federal law. Both IWCA and the FLSA make it unlawful for an employer to discharge or retaliate against an employee for making a complaint to their employer about their failure to be paid in accordance with the

FLSA or IWCA. 29 U.S.C. § 215(a)(3); Idaho Code § 45-613. To prevail on a claim of retaliation, a plaintiff must establish a prima facie case of retaliation by showing: "1) that he engaged in a protected activity; 2) that he then suffered an adverse employment action; and 3) that there is a causal link between the protected activity and the adverse employment action." *Roces v. Reno Housing Authority*, 300 F. Supp. 3d 1172, 1205 (D. Nev. 2018); *see also Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000). If the plaintiff makes this showing, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Id.* at 1123–24. If the employer satisfies its burden, then the plaintiff must offer "specific and substantial" evidence of pretext. *Bergene v. Salt River Project Agr. Imp. & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001). The Court will tick through this three-step analysis.

### 1.  Prima Facie Case of Retaliation

Phoenix Fire argues that neither Mr. Howes nor Mr. Villanueva have presented sufficient evidence to support their prima facie cases because they did not engage in any protected activity. Both plaintiffs claim they raised concerns about the failure to pay employees for the drive to Jackson. To be sure, "[p]rotesting an unlawful employment activity" is a protected activity." *Roces*, 300 F. Supp. 3d at 1205. While the protest need not be formally lodged, it must be

"comprehensibly communicated that the opposed conduct 'fairly fall[s]' within the protection of law.'" *Id.* (quoting *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988)). At a minimum, the employee must communicate "the *substance* of his allegations to the employer e.g., that the employer has failed to pay adequate overtime, or has failed to pay the minimum wage." *Lambert v. Ackerley*, 180 F.3d 997, 1008 (9th Cir. 1999) (emphasis in original). That said, "not all amorphous expressions of discontent related to wages and hours constitute complaints within the meaning of" the statute. *Id.* at 1007.

There are material disputes of fact as to whether Mr. Howes and Mr. Villanueva engaged in a protected activity. On one hand, both plaintiffs claim they complained to their supervisors about the failure to pay overtime wages. *Howes Decl.* at ¶ 11, Dkt. 17-4; *Villanueva Decl.* at ¶¶ 12, 13, Dkt. 17-7. These complaints regarding overtime pay "taken in the light most favorable to Plaintiff[s], fall squarely within the realm of protected activity under the FLSA." *Harris v. Brennan*, No. EDCV 20-1162 JGB (SPx), 2024 WL 2037150, at *6 (C.D. Cal. Apr. 16, 2024). On the other hand, taken in the light most favorable to the defendant, amount to no more than "amorphous expressions of discontent" about the drive time policy. *Lambert*, 180 F.3d at 1007. Determining "[w]hether a complaint has been filed that provides adequate notice to the employer is a question 'to be resolved as a matter of factual analysis on a case-by-case basis.'"

**MEMORANDUM DECISION AND ORDER - 15**

*Rosenfield v. GlobalTranz Enterprises*, 811 F.3d 282, 286 (9th Cir. 2015) (quoting

*Lambert*, 180 F.3d at 1008). These disputes are enough to deny the plaintiffs'

motion for summary judgment on the wrongful termination claims.

Next, Phoenix Fire does not appear to dispute that Mr. Howes suffered an

adverse employment action when it terminated his employment. It does, however,

argue that Mr. Villanueva cannot demonstrate he suffered an adverse employment

action because he was not constructively discharged. An employee is

constructively discharged where "conditions become so intolerable that a

reasonable person in the employee's position would have felt compelled to

resign[.]." *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (quoting *Penn.

State Police v. Suders*, 542 U.S. 129, 141 (2004)). More specifically, a

"constructive discharge occurs when the working conditions deteriorate . . . to the

point they become sufficiently extraordinary and egregious to overcome the

normal motivation of a competent, diligent, and reasonable employee to remain on

the job to earn a livelihood." *Brooks v. City of Mateo*, 229 F.3d 917, 930 (9th Cir.

2000). "Whether working conditions were so intolerable and discriminatory as to

justify a reasonable employee's decision to resign is normally a factual question

for the jury." *Sanchez v. City of Santa Ana*, 915 F.2d 424, 431 (9th Cir. 1990).

Mr. Villanueva's constructive discharge theory centers on a phone call with

Dennis Apple, a supervisor, where Mr. Apple yelled at Mr. Villanueva and called

**MEMORANDUM DECISION AND ORDER - 16**

him derogatory names. *Villanueva Decl*. at ¶ 13, Dkt. 17-7; Def. Ex. D at 31:9–

33:11, 37:6–40:25, Dkt. 16-7. About a month after this phone call, Mr. Villanueva

was assigned to work with Mr. Apple and decided not to show up. *Id.* at 37:1–11.

As Phoenix Fire points out, "a single isolated incident is insufficient as a matter of

law to support a finding of constructive discharge." *Sanchez*, 915 F.2d at 431.

Indeed, a plaintiff must show "some aggravating factors, such as a continuous

pattern of discriminatory treatment." *Id.* (internal quotation marks omitted). Mr.

Villanueva claims there were "multiple incidents where [Mr. Apple] yelled at me

in front of people." Def. Ex. D at 33:16–17, Dkt. 16-7. This includes instances

where Mr. Villanueva wanted to stop at a gas station for lunch or a coffee and Mr.

Apple thought it was a "waste of fuel." Def. Ex. D at 34:10–25, Dkt. 16-7. This

testimony, taken in the light most favorable to Mr. Villanueva could support a

constructive discharge theory, though it just barely meets this threshold.

Phoenix Fire also argues that Mr. Villanueva never reported Mr. Apple's

conduct to Phoenix Fire, so it never had the opportunity to rectify the problem.

Indeed, "[a]n employee who quits without giving his employer a reasonable chance

to work out a problem has not been constructively discharged." *Poland*, 494 F.3d

at 1185 (quoting *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir.

1996)). While Mr. Villanueva did not formally file a report, he did report Mr.

Apple's conduct to a supervisor and testified that human resources was already

aware of Mr. Apple's conduct. Def. Ex. D at 64:1–65:18, Dkt. 16-7. Under these circumstances, a reasonable jury could conclude that Phoenix Fire had the opportunity to address Mr. Apple's conduct. Accordingly, Mr. Villanueva has presented just enough evidence of constructive discharge to avoid summary judgment on this basis.

Turning now to the third element of a prima facie case. Mr. Howes has presented enough event of a causal link between the adverse employment action and the protected activity. This causal link "can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Dawson v. Entek Int'l Inc.*, 630 F.3d 928, 936 (9th Cir. 20111). Here, Mr. Howes repeatedly complained about the drive time policy, culminating in an email outlining his suggestions for a new policy in October 2023. *See* Bice Ex. F, Dkt. 16-8. Mr. Howes was fired from his job later that month. Def. Ex. B at 19:8–10, Dkt. 16-5. The proximity between the protected activity, culminating in the email, and Mr. Howes' termination supports his prima facie claim of retaliation. *See Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004) ("The causal link between a protected activity and the alleged retaliatory action can be inferred from timing alone when there is close proximity between the two.").

The same is not true of Mr. Villanueva. He claims he had several conversations about the drive time policy with Mr. Apple in 2023. *Villanueva Decl.* at ¶¶ 12, 13, Dkt. 17-7. He does not identify when these conversations occurred nor are there any facts suggesting Mr. Apple's harassing conduct only began after Mr. Villanueva complained about the drive time policy. Rather, it appears Mr. Apple was known to be difficult to work with and, by Mr. Villanueva's own account, was often yelling at employees. Def. Ex. D at 33:12–21; 35:23–36:17. Mr. Villanueva has not articulated any connection between the protected activity and the adverse employment action and, upon a review of the record, the Court cannot see any causal link between the two. Indeed, the two events appear connected only by Mr. Apple's involvement as a supervisor. That fact, alone, is not enough to establish a causal link. *See Thomas*, 379 F.3d at 812 n.4 ("The employer's awareness of the protected activity is also important in establishing a causal link."). Accordingly, Phoenix Fire's motion for summary judgment is granted as to Mr. Villanueva's wrongful termination claim.

### 2.  Legitimate Reason for Adverse Employment Action

Phoenix Fire argues summary judgment is appropriate because it had legitimate reasons for terminating Mr. Howes. According to Phoenix Fire, it fired Mr. Howes for poor performance. "To meet this burden, the defendant must clearly set forth, through the introduction of admissible evidence, reasons for its

employment decision which, if believed by the trier of fact, would support a finding that the employment action was not the result of unlawful [retaliation]." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1169 (9th Cir. 2007) (internal quotation makes omitted).

Phoenix Fire points to sufficient evidence, that if true, supports its claim that it fired Mr. Howes for his poor performance. For instance, Mike Bond, the operations manager, explains that he noticed Mr. Howes having trouble properly supplying his jobs as well as with certain valve installations. *Bond Decl.* at ¶¶ 6, 8, 9, Dkt. 16-9; Def. Ex. B at 70:3–71:7; 140:6–18. Despite conversations with Mr. Howes, Mr. Bond did not notice an improvement in Mr. Howes' performance, resulting in his termination. *Bond Decl.* at ¶ 11, Dkt. 16-5. This evidence is enough to carry Phoenix Fire's burden at summary judgment.

### 3. Evidence of Pretext

Finally, Phoenix Fire argues that even if Mr. Howes can carry his burden to show a prima facie case of discrimination, summary judgment is not appropriate because he cannot rebut Phoenix Fire's legitimate reason for terminating his employment with any evidence of pretext. The Court disagrees.

Once a defendant provides evidence of a legitimate, nonretaliatory reason for terminating a plaintiff's employment, the burden shifts back to the plaintiff to show that the stated reason is pretextual. *Bergene*, 272 F.3d at 1142. A plaintiff can

show pretext with either direct or circumstantial evidence. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003). "To show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." *Id.* "Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption." *Id.*

Phoenix Fire claims it terminated Mr. Howes due to his poor work as a foreman. *See Bond Decl*. at ¶¶ 3–11, Dkt. 16-9. Mr. Howes has presented sufficient evidence for a jury to conclude this reason is pretextual. He points to statements made by Phoenix Fire supervisors that he was fired, in part, for "insubordination." *Wessel Decl.*, Ex. A at 91:13–23, Dkt. 17-5. The perceived insubordination stemmed from Mr. Howes' complaints about the drive time policy. *Id.* This evidence is enough to raise a factual dispute as to whether Phoenix Fire terminated Mr. Howes in retaliation, as Mr. Howes claims, or if he was fired for performance, as Phoenix Fire claims. As such, Phoenix Fire's motion for summary judgment is denied as to Mr. Howes' wrongful termination claim.

## ORDER

**IT IS ORDERED that:**

1.    Plaintiff's Motion for Partial Summary Judgment (Dkt. 17) is **DENIED**.

MEMORANDUM DECISION AND ORDER - 21

2.    Defendant's Motion for Summary Judgment (Dkt. 16) is **DENIED IN PART** and **GRANTED IN PART**. Summary judgment is granted as to Mr. Villanueva's wrongful termination claim and denied as to all other claims.

DATED: July 22, 2025

B. Lynn Winmill
U.S. District Court Judge